BELLEVILLE CASKET COMPANY, a Corporation, Appellant, v. CARL E. BRUEGGEMAN, HILDA E. BRUEGGEMAN, HELEN MARIE KARN, ROBERT B. KARN, WALTER R. DOUGLAS, Trustee, V. SELVAGGI, EMIL A. FUSZNER, Trustee, THE TRUST COMPANY OF KIRKWOOD, a Corporation, and R. V. NICHOLAS.—No. 38945.—182 S. W. (2d) 555.

Division One, September 5, 1944.

Rehearing Denied, October 9, 1944.

*Paul M. Gerwitz, Jr.,* and *Suelthaus & Krueger* for appellant.

*Robert D. Abbott, Clarence M. Barksdale* and *Jackson F. Adams* for respondent Hilda Brueggeman.

BRADLEY, C.—Plaintiff as a judgment creditor of defendant Carl E. Brueggeman brought this action to set aside certain deeds to described land in St. Louis County and for other relief. The conveyances sought to be set aside convey all or part of the land involved (67 acres) and, as we understand, are these: (1) A warranty deed, July 25, 1933, from Margaret Tigelhoff to defendants Carl E. and Hilda E. Brueggeman, husband and wife; (2) a trustee's deed, February 24, 1934, to Edward J. and Florence E. Merk, husband and wife, on the foreclosure of second deed of trust executed by the Brueggemans; (3) a quitclaim deed, September 23, 1937, from the Merks to Helen Karn; (4) a quitclaim deed, October 20, 1937, from the Merks to Robert B. Karn and Helen Karn, husband and wife; and (5) a quitclaim deed, December 18, 1940, from the Karns to defendant Hilda E. Brueggeman. The Karns are the son-in-law and daughter of the Brueggemans. Plaintiff alleges that all these conveyances were intended to be and were fraudulent as to the creditors of defendant Carl E. Brueggeman, and especially fraudulent as to plaintiff. Plaintiff further asked that the Brueggemans be restrained from transferring or encumbering said land, and that the record title thereto be divested out of defendant Hilda E. Brueggeman "and vested in defendant Carl E. Brueggeman, and that plaintiff's judgment be declared a lien" thereon.

The Brueggemans and the Karns answered separately. Carl E. Brueggeman answered by general denial. The Karns denied all charges of connivance with the Brueggemans to defraud creditors and disclaimed any interest in the land. Hilda E. Brueggeman also denied all charges of connivance to defraud creditors, and alleged that she was the bona fide owner of the land. Hilda E. also pleaded laches and the 5-year statute of limitations. Defendants Douglas, Fuszner, The Trust Company of Kirkwood, and Nicholas did not answer. Dismissal was made as to defendant Selvaggi. The trial court found for defendants and plaintiff appealed. An action to set aside a conveyance of real estate as being fraudulent to creditors involves title to real estate, hence jurisdiction of the present appeal is in the supreme court. Harriman v. Creason et al., 352 Mo. 1176, 181 S. W. (2d) 502.

Carl E. Brueggeman was one of the organizers of the Belleville Casket Company, plaintiff here (of Belleville, Illinois, we infer). He owned some of its stock; served for a few years as its secretary; and was a director until 1935. In 1924, plaintiff company had, in St. Louis, some kind of a business, termed an agency or outlet, and in 1924, Carl E. Brueggeman, then a salesman for the plaintiff, purchased the agency or outlet in St. Louis. Thereafter, and until 1930, Carl E. Brueggeman operated the outlet individually under the name of Undertakers Supply Company. In 1930, the Undertakers Supply Company was incorporated. Mrs. Brueggeman (Hilda E.) and Edward J. Merk had 1 share each and Carl E. Brueggeman the remaining 198 shares. The note upon which plaintiff obtained the judgment against Carl E. Brueggeman was given to plaintiff to cover supplies purchased from plaintiff by Carl E. Brueggeman while operating the outlet individually under the name of Undertakers Supply Company. The note, due on demand, was given January 29, 1932, and was originally for $15,793.52. The judgment for $13,683.99 was obtained September 3, 1940. Execution on the judgment was issued November 12, 1940, and was returned nulla bona January 13, 1941. The present cause was commenced January 24, 1941.

The 67 acres of land is a part of an original tract of 96.5 acres, called the Topping Road acreage. Several parcels were sold after conveyance to the Brueggemans on July 25, 1933, before this cause was commenced, but plaintiff does not seek to set aside the deeds to the parcels sold. The Tigelhoff deed, supra, of July 25, 1933, conveyed the whole tract to Carl E. Brueggeman and his wife, Hilda E., by the entirety, so far as appeared on the face of the deed. It is the claim of Hilda E., however, that the land was purchased with her money and that, in fact, the land was hers. The purchase price was $17,000. The consideration was taken care of by a first deed of trust on the property for $12,000, a second for $2,000, cash (checks) $3,000. The notes, as well as the deeds of trust, were signed by both of the Brueggemans. The $3,000 in checks was made up of 5 checks payable to the real estate company that handled the deal. The checks were respectively for $400, $750, $900, $800, and $150, and were respectively dated July 8, 18, 22, 25, 29, 1933. All the checks were drawn on the Mercantile-Commerce National Bank, St. Louis, and all, except the $400 check, were drawn by Carl E. Brueggeman, on his personal account. The $400 check was drawn on the account of the Undertakers Supply Company. The importance of these checks appears, infra.

The vicissitudes of the Brueggemans, reflected in the record, begins with their marriage in 1916, and continues over a period of some 25 years or more. The important question, on the facts, is whether the Topping Road property was purchased with Hilda E. Brueggeman's

money. She sought to so establish and the trial court believed her. The story starts, as stated, upon the marriage of the Brueggemans.

The first piece of property with which Hilda E. Brueggeman was connected after her marriage to Carl E. Brueggeman was what is termed the Wyoming Street property (3701 Wyoming Street, St. Louis). Carl E. Brueggeman's first wife was Gladys Brueggeman. They were divorced in 1916, and Hilda E. and Carl were married on same day divorce was granted. April 25, 1913, Johannah and Emil Gassner conveyed the Wyoming Street property to Gladys Brueggeman, then the wife of Carl. March 14, 1915, Gladys, Carl joining, conveyed said property to Mrs. Bruer, mother of Carl. Upon the marriage of Carl and Hilda in 1916, Carl's mother conveyed said property to Hilda and Carl by the entirety. October 5, 1917, Hilda and Carl conveyed said property to Adelle Marien, and on same day Marien conveyed to Hilda what is termed the Magnolia Street property. Also, on the same day, Marien executed a $1600 note payable to Hilda; the note was secured by a deed of trust on the Wyoming Street property. About the time Hilda E. acquired title to the Magnolia Street property her father gave her $6,000. She testified that the proceeds of the $1600 note and the $6,000 went into the construction of a house and other improvements on the Magnolia Street property.

When the Magnolia Street house was completed the Brueggemans moved in, and on February 8, 1926, Hilda and Carl conveyed the Magnolia property to Albert F. and Hetty Bina. The deed recited a consideration of $100 and other valuable consideration", but Mrs. Brueggeman said that she got "about $14,000 out of the Magnolia property." The deed was made subject to a $6,000 deed of trust. Part of the money from the Magnolia property was used to acquire a lot in the Moorlands Park, also called Boland Drive. The deed to the Moorlands property was to Carl and Hilda Brueggeman, and was executed February 10, 1926, by the McRoberts Realty Company. The deed recited a consideration of "$100 and other valuable consideration", but revenue stamps amounted to $6.50. The Brueggemans gave to the McRoberts Realty Company a deed of trust on the Moorlands property to secure $1500 of the purchase price. A house was erected on the Moorlands property and the Brueggemans lived in it for about two years. The building money used on the Moorlands property was what was left of the proceeds of the Magnolia property, "a building loan", and "$2,000, that Mr. Brueggeman's mother and stepfather (the Bruers) gave us", according to Mrs. Brueggeman. When the house on the Moorlands property was completed, the Brueggemans moved in, and the Bruers also.

March 23, 1928, a contract of sale was made to sell the Moorlands property to Dr. Harvey J. Howard for $34,000, as follows: Earnest money, $2500; $11,500 by October 1, 1928; $20,000 note due in 3

years, 5½% and secured by first deed of trust on the property. The deed was executed October 1, 1928. March 21, 1928, Edward. and Adelle Lantz conveyed to Carl and Hilda Brueggeman part of block A in the Moorlands, which lot adjoined the lot sold to Dr. Howard. The consideration recited was "$100 and other valuable consideration." According to the Brueggemans the proceeds, or some of the proceeds of the Howard sale went into the second Moorlands property. Also, what is called a building loan was placed on the second Moorlands property and a $20,000 house erected thereon. November 25, 1930, the second Moorlands property was conveyed by the Brueggemans to Martin W. D'Arcy and wife; some earnest money was paid; the deed was subject to a first deed of trust for $20,000 and the D'Arcys, as we understand it, secured $25,200 of the purchase price by a second ($15,200) and a third ($10,000) deed of trust on the property.

July 22, 1930, the Lake Forest Development Corporation conveyed to Carl and Hilda Brueggeman lot 51 in Lake Forest. A $35,000 house was erected on the Lake Forest lot and the Brueggemans moved in "shortly before Thanksgiving" in November, 1930. The proceeds from the sale of the second Moorlands house went into the Lake Forest property. December 5, 1930, the Brueggemans gave a deed of trust on the Lake Forest property to secure a $20,000 loan. After moving into the Lake Forest property the Brueggemans occupied it until August, 1933. On August 16, 1933, the Brueggemans conveyed the Lake Forest property to Eugene Freund, subject to a balance of $18,500 due on a deed of trust. The consideration recited is "$100 and other valuable considerations", but the revenue stamp amounted to $9.00. Mrs. Brueggeman said, "I got between eight and nine thousand dollars in cash out of it and the equity in some flats on 2154 Geyer Avenue, and Mr. Freund assumed the deed of trust." An "exchange contract" dated July 5, 1933, shows that $8750 cash was paid by Freund.

The above is the story, in brief, down to the purchase of the Topping Road property, 67 acres of which are involved here. We now take up the affairs of the Brueggemans from the time of the purchase of the Topping Road property. Shortly after the purchase (July 25, 1933), Carl E. Brueggeman ▮▮▮▮ commenced, for his wife, according to their evidence, the construction of a house on a parcel of the Topping Road property. November 6, 1933, W. D. Olderworth obtained a judgment against Carl E. Brueggeman for $5,000. After this judgment was obtained difficulties were encountered in securing building loans on the Topping parcel, upon which the house was being built, and in February, 1934, the $2,000 second deed of trust, given by the Brueggemans on the Topping Road property as part of the purchase price was foreclosed. Plaintiff says that the foreclosure was to avoid payment of the Olderworth judgment. Such is denied by the

Brueggemans; they say that the foreclosure was made for the purpose of being able to get loans on the property so building operation could go on. The Olderworth judgment was satisfied September 9, 1935. At the foreclosure sale the land was bid in by Carl E. Brueggeman, but the trustee's deed (mentioned, infra) was to Edward J. and Florence E. Merk and recites a consideration of $2500. The Merks did not claim to own the land, but Edward J. considered that they held title for Carl E. Brueggeman and not Hilda E. Brueggeman. Edward J. Merk is the same Merk who owned 1 share of the stock in the Undertakers Supply Company. He was employed by this company from the time of its incorporation (1930) until it made an assignment for the benefit of creditors in September, 1937. The place of business of the Undertakers Supply Company was 4219 Laclede Avenue, St. Louis, and when plaintiff acquired whatever stock of merchandise the Undertakers Supply Company had when it made the assignment for the benefit of creditors, plaintiff continued the business at the same place. After plaintiff took over at this place, Mr. Merk worked for plaintiff, and was employed by plaintiff at the time of the trial and was plaintiff's principal witness.

According to the evidence of Merk, Mrs. Brueggeman had practically nothing to do with any of the sales and building operations with which Mr. Brueggeman was connected during the period that Merk was with the Undertakers Supply Company, but according to Mr. and Mrs. Brueggeman, and witnesses Anthony Collier, cashier and real estate loan officer, Jefferson-Gravois Bank, Charles A. Shaw, real estate dealer for 21 years and for seven years Mayor of the City of Clayton, Walter H. Lerch, real estate dealer for several years, Thomas P. Saum, an architect who prepared the plans for the Lake Forest house, Mrs. Brueggeman had as much or more to do with the various sales and building operations as did Mr. Brueggeman.

September 3, 1935, six days before the Olderworth judgment was satisfied, the Merks sold a parcel of the Topping Road tract to Conrad Pfrimmer and wife. Merk said that he received no part of "the money that was paid by the Pfrimmers." After the foreclosure of the $2,000 second deed of trust, building money was obtained, the Merks executing the necessary deeds of trust, and the first house was finished on the Topping Road property and the Brueggemans moved in. The first house was sold, along with a parcel of the land, on February 29, 1936, to Francis R. Stout. Plaintiff claims, based on Mark's evidence, that the greater part of the money used in the construction of the first house, the Stout house, was from checks on the Undertakers Supply Company's bank account. The checks total $5200 and were drawn on the Undertakers Supply Company's bank account, but the payees, in some instances, were those who sold merchandise to the Undertakers Supply Company. But if the money was derived as claimed by plain-

tiff, the Brueggemans point out that the evidence tended to show that the Supply Company was reimbursed when the first house was sold.

September 23, 1937, the Merks conveyed (by quitclaim) a part of the unsold portion of the Topping Road acreage to Helen Karn, and on October 20, 1937, they (the Merks) conveyed (by quitclaim) the remainder of the unsold portion to Dr. Robert B. and Helen Karn, son-in-law and daughter of the Brueggemans, as above stated. It appears that the Merks refused to execute these quitclaim deeds until $1200 was put in escrow to protect them against any liability to which they might be subject by reason of their connection with the Topping Road property. The $1200 was furnished by defendant Dr. Robert B. Karn and his father, $600 each, and both testified that the loan was to Hilda E. Brueggeman and not to Carl E. Brueggeman. The Karns, as they understood, held the title for Hilda E. Brueggeman. It also appears that Hilda E. Brueggeman owed Dr. Karn a considerable sum in addition to the $1200.

The Pfrimmers, to whom a parcel of the Topping Road property had been conveyed ■■■ by the Merks, conveyed a part thereof back to the Karns, and the Karns conveyed (October 20, 1937) the same parcel to Lydia E. and Lulu Oonk. November 9, 1937, the Karns conveyed a part of the acreage to Harry C. Mendsen. August 30, 1938, the Karns gave a deed of trust on the unsold acreage to The Trust Company of Kirkwood to secure a loan of $5500. At the time of the trial this deed of trust had been reduced to $5,000 and was the only outstanding.mortgage on the acreage here involved which was valued at an average of $400 per acre, or $26,800 for the 67 acres. May 3, 1939, the Karns conveyed a parcel of the land, together with the house which has been erected thereon, to Joseph Ward and wife, Agnes M. June 30, 1939, the Karns conveyed a parcel to Frank L. McNally and wife, Nell V. December 18, 1940, the Karns conveyed all the remaining land in the tract to Hilda E. Brueggeman.

From the time of the purchase of the Topping Road acreage to the conveyances back to Hilda E. Brueggeman by the Karns, 6 houses were built thereon and sold, along with a parcel of land. Carl E. Brueggeman, as contractor, erected some of the houses. When one house was finished and sold another was soon commenced. In all these, Carl E. Brueggeman had a hand, but as stated, both he and Hilda E. Brueggeman claimed he was acting for her. We have not given details as to all these sales; such, we do not think, is necessary.

■■■ The principal question is, Whose money was used in the purchase of the Topping Road property? As appears, supra, Freund paid $8750 cash in the deal for the Lake Forest property. From the Freund ledger sheets, it appears that the following checks were issued in connection with the deal: July 6, 1933, to Carl and Hilda Brueggeman, $500 earnest money; July 17, 1933, to Carl and Hilda Brueggeman, $1,000 additional earnest money; August 16, 1933, to Carl and Hilda

Brueggeman, "account purchase 51 Lake Forest, $6,000 and $1,344.-37." As we understand, the $500 check of July 6, was deposited in the account of the Undertakers Supply Company in the Mercantile-Commerce National Bank, and the other checks totaling $8,244.37 were deposited in said bank in the personal account of Carl Brueggeman. If the Lake Forest property belonged to Hilda Brueggeman, as she claims, and the Freund checks as she claims belonged to her, and were deposited as stated, then the Undertakers Supply Company and Carl Brueggeman accounts in the bank were reimbursed for the 5 checks, supra, drawn respectively July 8, 18, 22, 25, 29, 1933, in making the cash payment on the Topping Road property.

When the Undertakers Supply Company ceased (September, 1937) to do business at 4219 Laclede Avenue, many of its records, old checks, files, etc., were left there, and came into the possession of plaintiff. It is not too farfetched to say that, with the aid of Merk, who evidently was not unwilling, these records, checks, files, etc., were minutely combed. Yet no claim was made that Mrs. Brueggeman was not the owner of the Topping Road property until some four years after plaintiff took over at 4219 Laclede Avenue, and some 8 years after the purchase of the Topping Road property. The first intimation the Brueggemans had that plaintiff had an eye on the Topping Road property in connection with its demand note on Carl E. Brueggeman was when this cause was filed. It is true that the judgment against Carl E. Brueggeman was not taken until September 3, 1940, but it is also true that the note upon which the judgment was based was given by Carl E. Brueggeman January 29, 1932.

In many of the transactions and operations mentioned in the record, Carl E. Brueggeman, according to his and Mrs. Brueggeman's evidence, was acting for his wife. In other words, many of the transactions were between husband and wife, and the rule in this state is that transactions between husband and wife to the prejudice of the husband's creditors are looked upon with suspicion, and their good faith must be so clearly shown that there can be no reasonable doubt of the honesty of the transactions. Green v. Wilks et al. (Mo. Sup.), 109 S. W. (2d) 859, l. c. 865 and cases there cited. But if it be conceded, in the present case, that some of the transactions may not be above suspicion, it will likewise be conceded that suspicion alone will not be sufficient to divest title to real estate. However, the record reflects that Mr. and Mrs. Brueggeman proceeded in about the same manner respecting their real estate dealings and building operations subsequent to plaintiff's note as they did prior thereto.

It could not, under this record, be demonstrated mathematically, by reference to transactions here involved, that Mrs. Brueggeman is the bona fide owner of the Topping Road property. Neither could it be so demonstrated that she is not such owner. One of the ablest Judges in this State, Judge Julius R. Nolte, now deceased,

heard these witnesses for some seven days in the trial of this cause. The record is lengthy, some 950 pages. The evidence of the Brueggemans covers some 360 pages. This is an equity case and is here for trial de novo, but we defer to the chancellor's finding on the facts unless we are satisfied that such finding is against the weight of the evidence. Snow v. Funck et al. (Mo. Sup.), 41 S. W. (2d) 2; Peikert v. Repple et al., 342 Mo. 274, 114 S. W. (2d) 999, l. c. 1002, and cases there cited. The trial chancellor made a general finding only, which of course, included a finding against plaintiff on the facts. We are not satisfied that the finding is against the weight of the evidence.

It will not be necessary to rule the questions on laches and the statute of limitations. The judgment should be affirmed and it is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.